

**SO ORDERED.**

**SIGNED this 04 day of May, 2009.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| CASSON STALLINGS<br>ALISON ELAINE PELPHREY | 08-08973-8-ATS |
| DEBTORS | |

**ORDER DENYING TRUSTEE'S MOTION TO DISMISS**

The matter before the court is the motion filed by the chapter 13 trustee, John F. Logan, to dismiss the case of Casson Stallings and Alison Elaine Pelphrey. The trustee and the debtors agree that the issues before the court are whether the debtors' plan provides, as required by 11 U.S.C. § 1325(b)(1)(B), that all of the debtors' projected disposable income to be received in the applicable commitment period is being applied to make payments to unsecured creditors, and whether, as required by 11 U.S.C. § 1325(a)(3), the debtors' plan is proposed in good faith. A hearing was held in Raleigh, North Carolina on April 7, 2009. This motion was heard at the same time as a similar motion in the case of In re Harris, Case No. 08-08162-8-ATS. The analysis and result in the two cases are essentially the same.

Casson Stallings and Alison Elaine Pelphrey filed a joint petition for relief under chapter 13 of the Bankruptcy Code on December 12, 2008, and proposed a plan that pays no dividend to

unsecured creditors. The trustee argues that the debtors' plan cannot be confirmed, because the debtors have monthly disposable income of $90.05 that is not being paid to unsecured creditors through the plan as is required by § 1325(b). The debtors maintain that they have no disposable income and that their monthly disposable income in fact is a negative $131.95. If the trustee's disposable income computation is correct, the debtors' plan must provide payment to unsecured creditors of at least $5,403, but if the debtors' calculation is accurate, they are not required to pay anything to unsecured creditors.

> 11 U.S.C. § 1325(b)(1) provides that
>
> [i]f the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to the unsecured creditors under the plan.

The parties agree that based on the amount of the debtors' current monthly income of $16,189.15, the applicable commitment period for which the plan must apply the debtors' disposable income to unsecured creditors is five years. It is also agreed that the debtors' disposable income shall be determined by reducing the debtors' current monthly income by the amounts reasonably necessary to be expended as determined by § 707(b)(2)(A) and (B).

The difference between the debtors' and the trustee's disposable income amounts is explained by the different ways in which they treat the deductions from current monthly income of expenses related to the debtors' four automobiles. In arriving at negative disposable income of -$131.95, the debtors reduced their current monthly income of $16,189.15 by $489 as the local allowance for

vehicle ownership of their 2001 Honda Odyssey, $411.42[1] as the local allowance for vehicle ownership of their 1998 Volvo V70, and $222, $77.58, and $78.33 as the amount of their average monthly payments on the secured claims that are secured respectively by their 2003 Toyota Sequoia, 1998 Volvo V70, and 2001 BMW 528 vehicles.  The trustee agrees that the debtors are entitled to a local allowance for vehicle ownership of two vehicles, but maintains that the local vehicle allowance should be reduced by the amount of the average monthly payment on the vehicles with the highest average monthly payments, the Toyota Sequoia ($222) and the BMW ($78.33).

Disposable income for purposes of §1325(b) for debtors with current monthly income greater than that established by § 1325(b)(3) is determined essentially by the chapter 7 means testing formula.  Current monthly income is the starting point from which expenses are deducted as provided in § 707(b)(2)(A) and (B).  Sections 707(b)(2)(A)(i) and 707(b)(2)(A)(ii)(I) provide that the debtor's monthly expense amounts shall be determined by National Standards and Local Standards issued by the Internal Revenue Service.  Under the Local Standards, North Carolina debtors may deduct a monthly expense allowance for vehicle ownership of $489, and may make deductions for up to two automobiles.  Under § 707(b)(2)(A)(i) and § 707(b)(2)(A)(iii)(I), debtors may deduct as an expense the average monthly payments "contractually due to secured creditors."

To facilitate the computation of disposable income, Official Form 22C itemizes potential expenses that may be deducted from current monthly income.  The vehicle ownership expense allowance is listed on lines 28 and 29 of Official Form 22C, and the average monthly payment on a secured claim, including a claim secured by a vehicle, is listed on line 47.  To ensure that a debtor

---

[1] This number is derived by taking the local allowance of $489 and subtracting the monthly payment of $77.58.

3

does not receive an expense deduction for both the ownership allowance for a vehicle and an expense deduction for a payment for a secured claim secured by the same vehicle, Official Form 22C requires that the secured payment amount on line 47 be subtracted from the expense allowance for the same vehicle listed on either line 28 or line 29.

In this case, the vehicle listed on line 28 was unencumbered and there was no secured claim payment to deduct. The vehicle listed on line 29, while encumbered, had the lowest average monthly payment of the encumbered vehicles. The debtors also claimed the secured payments of $222 for the Toyota Sequoia, $78.33 for the BMW, and $77.58 for the Volvo as expenses, which they listed on Official Form 22C line 47.

The trustee contends that if the debtors had taken the vehicle ownership allowance in the Toyota Sequoia and the BMW, the amounts of the respective secured claims would have been subtracted from the allowance, and the debtors would have had disposable income that would have to be paid to unsecured creditors. That is true, but nothing in § 1325(b), § 707(b)(2), or the standards adopted by the Internal Revenue Service preclude debtors who own four vehicles from claiming the local vehicle allowance for an unencumbered vehicle and a vehicle with the lowest average monthly payment, and also claiming the secured payment expense deduction for the vehicles with the higher average monthly payments. The court agrees with the debtors that they were not required to list their expenses in a way that maximizes their disposable income. See In re Carlton, 362 B.R. 402 (Bankr. C.D. Ill. 2007). The debtors have no disposable income and have met the requirement of § 1325(b).

The trustee's final contention is that the debtors' plan was not proposed in good faith as required by § 1325(a)(3). According to the trustee, lack of good faith is supported by the debtors'

manipulation of expenses on Official Form 22C.  However, as already discussed, the debtors were not limited in how they treated their vehicle expenses for purposes of calculating disposable income, and the fact that they did not configure their vehicle expenses on Official Form 22C to benefit unsecured creditors is not an indicator of bad faith.  The court does not find these expenses to be unreasonable for a family of seven that includes children ages 10, 13, 14, 16, and 17.[2]  The debtors do have four vehicles, but with two teenagers who can drive, one of whom has special needs and must drive to school, all four are needed.

In determining whether a plan has been proposed in good faith, the court applies a totality of the circumstances test.  See Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986); Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982).  There are no factors in this case that support a finding that the plan was not proposed in good faith.

Based on the foregoing, the trustee's motion to dismiss is **DENIED**.

**SO ORDERED**.

**END OF DOCUMENT**

---

[2] The debtors listed their household size as six because they have joint custody of two of the children.